The order below is hereby signed.

Signed: July 31 2025

*Elizabeth L. Gunn*
U.S. Bankruptcy Judge



## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** <br>     **Allison Paul,** <br>         Debtor. | **Case No. 23-00222-ELG** <br> **Chapter 7** |
| **Lessard Design, Inc.,** <br>         Plaintiff, <br><br> v. <br><br> **Allison Paul,** <br>         Defendant. | **Adv. Pro. 24-10008-ELG** |

### MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS

Before the Court is the *Motion to Dismiss Adversary Proceeding* (the "Motion to Dismiss") filed by Allison Paul (the "Debtor"), the *Opposition to Motion to Dismiss Lessard Complaint* (the "Opposition") filed by Lessard Design, Inc. (the "Plaintiff"), and the reply thereto (the "Reply") filed by the Debtor.[1] Upon consideration of the pleadings and the arguments from the hearing held on May 21, 2024 (the "Hearing"), and for the reasons articulated herein, the Court grants the

---

[1] *See* Compl. to Den. Debtor's Discharge, to Declare Debt Nondischargeable, or to Dismiss Ch. 7 Case (the "Complaint"), *Lessard Design, Inc. v. Allison Paul (In re Paul)*, Case No. 23-00222-ELG (hereinafter the "Main Case"), ECF No. 83, Adv. Pro. 24-10008 (hereinafter the "Adversary Case"), ECF No. 1 (Bankr. D.D.C. Mar. 7, 2024); Mot. to Dismiss Lessard Compl., Adversary Case, ECF No. 9; Opp'n to Mot. to Dismiss Lessard Compl., Adversary Case, ECF No. 11; Reply, Adversary Case, ECF No. 13.

Motion to Dismiss as to Counts II, III, IV, and V, with leave to amend as to Counts III, IV, and V, and denies the Motion to Dismiss as to Counts I and VI.

## I.      Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.[3]

## II.      Background

This case arises out of the Debtor's prepetition change of employment, which precipitated a multi-count lawsuit filed by the Plaintiff in the United States District Court for the Eastern District of Virginia (the "EDVA Case").[4] The Complaint seeks three (3) alternate avenues of relief: (i) denial of the Debtor's discharge under §§ 727(a)(2), (a)(5), and/or (c); (ii) a declaration that the Debtor's debts to the Plaintiff are not dischargeable under §§ 523(a)(4), (a)(6), or under equitable remedies pursuant to § 101(5)(B); and/or (iii) dismissal of the Debtor's chapter 7 case under § 707(a).[5] The Complaint contains over 100 individually numbered paragraphs of factual allegations. In addition, the Complaint attaches and specifically incorporates the complaint from the EDVA Case (the "EDVA Complaint"[6]), which the Court can consider for purposes of the

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. The Federal Rules of Civil Procedure are referred to as the "Civil Rules."
[3] *See* Fed. R. Bankr. P. 7052.
[4] *See Lessard Design Inc. v. Allison Paul*, Case No. 23-cv-00616-LMB-IDD (E.D. Va. May 8, 2023). The EDVA Case is currently stayed pending the resolution of the Debtor's chapter 7 case.
[5] *See generally* Compl., Adversary Case, ECF No. 1.
[6] The Court will cite to the EDVA Complaint using the ECF page number of the Complaint at ECF No. 1.

pending Motion to Dismiss.[7] For purposes of the Motion to Dismiss, the Court accepts as true the well-pled factual allegations in the Complaint and the EDVA Complaint incorporated therein, and construes them in the light most favorable to the nonmoving party.[8]

### A. *Pre-Bankruptcy Events*

The Debtor was employed by the Plaintiff from June 2015 through January 2023 as a licensed architect and principal in the Plaintiff's single family and townhome division.[9] On January 4, 2023, the Debtor resigned effective January 27, 2023,[10] and began working for Bassenian Lagoni ("Bassenian") in early February 2023.[11] The Plaintiff is a full-service international architecture and planning firm with its principal office in Vienna, VA.[12] Bassenian is an architecture firm based out of California for whom the Debtor worked prior to her employment with the Plaintiff.[13] The Debtor was an at-will employee with the Plaintiff, and signed an employment agreement containing certain provisions on confidentiality, proprietary information, and surrender of materials in conjunction with her employment.[14]

In August 2022, while employed by the Plaintiff, the Debtor purchased a hard drive.[15] The Plaintiff alleges that during November 2022, while she was seeking new employment, the Debtor

---

[7] *See Millers Cap. Ins. Co. v. Hydrofarm, Inc.*, 2022 U.S. Dist. LEXIS 97830, at *9 (D.D.C. June 1, 2022).
    In addition to the allegations of the complaint, a court evaluating a motion under Rule 12(b)(6) may also consider certain 'documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice.'"; *Vasaturo v. Peterka*, 177 F. Supp. 3d 509, 511 (D.D.C. 2016) (second alteration in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). Generally, a court must accept as true the well-pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and construe those allegations "in the light most favorable to the plaintiff," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016).
[8] *See White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, 2022 Bankr. LEXIS 96, at *10–11 (Bankr. D.D.C. Jan. 14, 2022) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[9] *See* Compl. at 3, Adversary Case, ECF No. 1.
[10] *See id.* at 4.
[11] *See* Mot. to Dismiss at 2, Adversary Case, ECF No. 9.
[12] *See* Compl. at 3–4, Adversary Case, ECF No. 1.
[13] *See id.* at 26.
[14] *See id.* at 23–25.
[15] *See id.* at 28.

copied certain generally described categories of alleged proprietary information (the "ESI") onto the hard drive, which she kept in her possession after leaving her employment with the Plaintiff.[16] After the Debtor's resignation, the Plaintiff demanded that the Debtor turn over the hard drive and other devices in order to enable the Plaintiff to conduct a forensic analysis of Plaintiff's information allegedly taken by the Debtor.[17] The Debtor turned over the requested devices on or about February 10, 2023.[18]

Apparently unsatisfied, on May 8, 2023, the Plaintiff filed the EDVA Complaint against the Debtor consisting of six (6) counts for: (i) breach of contract; (ii) breach of loyalty; (iii) misappropriation of trade secrets in violation of the Defend Trade Secrets Act;[19] (iv) misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act;[20] (v) conversion; and (vi) copyright infringement. Approximately a week later, the Debtor hired employment counsel to defend her in the EDVA Case and consulted with bankruptcy counsel but did not file a petition for relief.[21]

While the EDVA Case progressed, the Debtor relocated from her one-bedroom apartment to a condominium. Specifically, the Debtor made an offer on a two-bedroom condominium on or about May 24, 2023, and closed at a sale price of $485,000 or about June 23, 2023.[22] The Plaintiff alleges that in the three (3) months between the filing of the EDVA Case and her chapter 7 case, the Debtor spent $190,000 from savings and checking accounts in various categories including: (i) a total of approximately $99,000, inclusive of closing costs, to purchase her condominium; (ii) a total of approximately $12,000 for employment counsel and $8,500 for bankruptcy counsel; (iii)

---

[16] *See id.* at 28–29.
[17] *See id.*
[18] *See id.* at 30.
[19] 18 U.S.C. § 1836(c).
[20] Va. Code § 59.1-336 *et seq.*
[21] *See* Compl. at 5, Adversary Case, ECF No. 1.
[22] *See id*. at 5–7.

4

at least $4,300 on travel; (iv) approximately $2,800 for a mortgage payment; (v) at least $13,700 on furniture, clothing, and other delineated personal property purchases; and (vi) at least $12,200 on other personal expenses such as food delivery, pet food, chiropractor, and personal care costs.[23] The Plaintiff also raises these and other, similar issues with respect to the Debtor's disclosures in her chapter 7 case.[24]

### B. The Debtor's Bankruptcy Case

On August 9, 2023, the Debtor filed a voluntary chapter 7 petition (the "Main Case").[25] While the EDVA Case was stayed by the bankruptcy filing, the litigation continued in the Main Case in the form of contested hearings regarding the Plaintiff's request to conduct Bankruptcy Rule 2004 examinations of the Debtor and Bassenian and the Plaintiff's objections to the Debtor's claimed exemptions.[26] Ultimately, the Court entered orders authorizing examination of the Debtor, the issuance of a subpoena to Bassenian, and a stipulated protective order.[27] The objections to the Debtor's exemptions are stayed pending resolution of the Motion to Dismiss.

On March 7, 2024,[28] the Plaintiff commenced this adversary case (the "Adversary Case"). On May 21, 2024, the Court held the Hearing on the Motion to Dismiss, Opposition, and Reply. Following the Hearing, the Court took the matter under advisement.

---

[23] *See id.* at 5–8.
[24] *See id.* at 8–10.
[25] *See* Vol. Pet. for Individuals Filing for Bankr., Main Case, ECF No. 1.
[26] *See* Mot. for Rule 2004 Exam., Main Case, ECF No. 17; Opp'n to Mot. of Lessard, Inc. for Examination of the Debtor under Fed. R. Bankr. P. 2004, Main Case, ECF No. 22; Creditor Lessard Design Inc.'s Reply in Support of Mot. for Rule 2004 Exam, Main Case, ECF No. 25; Obj. to Exemptions, Main Case, ECF No. 81.
[27] *See* Order Authorizing Rule 2004 Examination of Debtor and Continuing the Hearing as to Third Party Bassenian Lagoni, Main Case, ECF No. 34; Consent Order Authorizing Subpoena to Third Party Bassenian Lagoni, Main Case, ECF No. 41; Stipulated Protective Order, Main Case, ECF No. 42.
[28] The original deadline to file an objection to discharge or seek a determination that certain debts are not dischargeable was extended multiple times to March 7, 2024. *See* Consent Order Granting Creditor Lessard Design Inc.'s Mot. for Extension of Deadline to File Objections to Discharge and/or to Seek a Determination That Certain Debts Are Not Dischargeable, Main Case, ECF No. 21; Consent Order Granting Creditor Lessard Design Inc.'s Mot. for Additional Extension of Deadline to File Objections to Discharge and/or to Seek a Determination That Certain Debts Are Not Dischargeable, Main Case, ECF No. 36; Consent Order Granting Creditor Lessard Design Inc.'s Mot. for Additional

### III. Discussion

*A.    Legal Standard*

Civil Rule 12(b)(6), made applicable to this Adversary Case by Bankruptcy Rule 7012, provides that a complaint must be dismissed if it fails to state a claim upon which relief may be granted.[29] To withstand a motion to dismiss pursuant to Civil Rule 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, establishes "a claim to relief that is plausible on its face."[30] However, a court is not bound to "accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint."[31] Except in extraordinary circumstances, a Civil Rule 12(b)(6) motion to dismiss is evaluated solely with respect to whether the allegations in the complaint and any exhibits attached thereto contain a plausible claim for relief, without the introduction of defenses to the claim, and without further supplementation to the record.[32]

When considering whether a complaint adequately states a claim for relief under Civil Rule 12(b)(6), the Court must apply the pleading standards established by Civil Rule 8 and, if applicable, Civil Rule 9.[33] Civil Rule 8, made applicable to this Adversary Case by Bankruptcy Rule 7008, requires that a "short and plain statement of the claim showing that the pleader is entitled to relief" be included in any pleading asserting a claim for relief.[34] Civil Rule 9, made applicable to this Adversary Case by Bankruptcy Rule 2009, requires a plaintiff asserting a claim grounded in fraud

---

Extension of Deadline to File Objections to Discharge And/or to Seek a Determination That Certain Debts Are Not Dischargeable, Main Case, ECF No. 71.
[29] *See* Fed. R. Civ. P. 12(b)(6).
[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570).
[31] *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).
[32] *See Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015).
[33] *See* Fed. R. Civ. P. 8; *see* Fed. R. Civ. P. 9. *See White*, 2022 Bankr. LEXIS at *11 (citing *Curtis v. Chapman Fam. Tr. (In re Chapman)*, 628 B.R. 512, 521 (Bankr. S.D. Tex. 2021)).
[34] Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.

to meet a "heightened" pleading standard.[35] When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[36] In bringing a claim for fraud, a plaintiff must "state the time, place and content of the false misrepresentations" and "identify individuals allegedly involved in the fraud."[37] The Debtor seeks to dismiss each of the counts in the Complaint. The Court will address the sufficiency of each in turn.

B.  *Motion to Dismiss*

1.  *Count I—Objection to Discharge Under 11 U.S.C. § 727(a)(2)*

In Count I, the Plaintiff seeks to have the Debtor's discharge denied due to her alleged transfer, removal, destruction, or concealment of property within one (1) year of the filing of her petition with the intent to hinder, delay, or defraud a creditor. Specifically, the Plaintiff points to the Debtor's purchase of her condominium and prepetition spending after the filing of the EDVA Case in support of the allegation that she "deliberately drained her assets to prevent creditors from recovering from her estate."[38]

To plead a cause of action under § 727(a)(2), a plaintiff must show that there was a transfer or a concealment of property belonging to the debtor within the year prior to the filing of the bankruptcy, and that such transfer was made with the intent to hinder, delay, or defraud a creditor.[39] Fraudulent intent is subject to a heightened pleading standard under Civil Rule 9(b) and requires a party alleging fraud to plead with particularity the circumstances constituting the fraud, but malice, intent, knowledge, or other conditions of a person's mind are allowed to be alleged generally.[40] In

---

[35] *See United States ex rel. Cimino v. Int'l Bus. Machs. Corp.*, 3 F.4th 412, 421 (D.C. Cir. 2021).
[36] Fed. R. Civ. P. 9(b).
[37] *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 54 (D.D.C. 2017).
[38] Compl. at 12, Adversary Case, ECF No. 1.
[39] *See WiscTex, LLC v. Galesky (In re Galesky)*, 648 B.R. 643, 660 (Bankr. E.D. Wis. 2022) (citing *In re Kontrick*, 295 F. 3d 724, 736 (7th Cir. 2002)); *Rosen v. Bezner*, 996 F. 2d 1527, 1531 (3d Cir. 1993) (internal quotations omitted); *see also Rutan v. Johns (In re Johns)*, 2023 Bankr. LEXIS 587, at *5–6 (Bankr. N.D. Tex. Mar. 7, 2023).
[40] *See Aston,* 248 F. Supp. at 50.

an action for denial of discharge under § 727(a), the plaintiff must plead actual intent and not constructive intent.[41] Fraudulent intent is typically not expressly stated, and instead a debtor's intent must be inferred from the debtor's actions including circumstantial evidence or by inferences drawn from a course of conduct.[42] A plaintiff can plead strong inferences of fraudulent intent by either "(a) alleging facts that show both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[43]

The Complaint alleges that following the filing of the EDVA Complaint (less than four (4) months before the Debtor filed for bankruptcy), the Debtor spent over $190,000, converting non-exempt cash accounts into either exempt real property or other nonrecoverable expenses. The Plaintiff specifically points to, *inter alia*, (i) the Debtor's condo purchase; (ii) a "spending spree" far in excess of the Debtor's budgeted monthly expenditures of $6,184.38, including payments for clothing, food, healthcare, housewares, pet supplies, mortgage payments, and legal retainers; and (iii) costs associated with a vacation.[44] The Plaintiff's allegations are specific and identify both the source and use of the Debtor's payments. The Complaint further relies upon the Debtor's transfer of two (2) rings to family members in the days prior to her bankruptcy filing.[45] The Complaint alleges that the spending during the relevant period shows a pattern of spending activity which, when considered as a whole, sufficiently constitutes strong circumstantial evidence of the Debtor's intent to hinder or delay a creditor through the conversion of the Debtor's unencumbered cash to exempt assets, nonrecoverable assets, or for other "luxury" costs and for the benefit of non-Plaintiff creditors. The allegations in the Complaint are specific, detailed, and thorough as to the

---

[41] *See Cournoyer v. Schamens (In re Schamens)*, 666 B.R. 521, 534 (Bankr. M.D.N.C. 2024).
[42] *See id.* (citing *Boyuka v. White (In re White)*, 128 F. App'x 994, 999 (4th Cir. 2005); *see also Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (internal citation omitted)).
[43] *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).
[44] *See generally* Compl. at 4–9, Adversary Case, ECF No. 1.
[45] *See id.* at 8.

8

Debtor's prepetition spending and plead a course of conduct from which intent could be inferred. Therefore, the Court finds that the Complaint has adequately pled a cause of action under § 727(a)(2) and denies the Motion to Dismiss as to Count I.

### 2.    *Count II—Objection to Discharge Under 11 U.S.C. § 727(a)(5)*

In Count II, the Plaintiff seeks to have the Debtor's discharge denied due to her alleged failure to adequately explain or otherwise justify the prepetition reduction in her nonexempt assets.[46] Because § 727(a)(5) does not require a showing of fraudulent intent, Civil Rule 9(b) does not apply.[47] In order to plead a *prima facie* cause of action under § 727(a)(5), a plaintiff must plead (i) the debtor at one point prepetition owned identifiable assets; (ii) on the petition date, the debtor no longer owned the assets; and (iii) the bankruptcy schedules or statements do not reflect an adequate explanation for the disposition of the assets.[48]

The Plaintiff relies upon the Debtor's prepetition spend down of her bank accounts in support of its § 727(a)(5) claim. The Complaint contains dozens of paragraphs specifying the use and destination of such funds, with details as specific as the name of service providers (*i.e.*, Splendor Nails[49]), stores (*i.e.*, HomeGoods[50]), and whether the funds were spent via checks or as cash withdrawals.[51] Thus, on its face, the Plaintiff defeats its own cause of action in Count II. A cause of action under § 727(a)(5) is maintained where the debtor fails to provide direct, specific evidence of the destination of assets. Based upon the specificity in the Complaint, it is clear that while the Plaintiff disagrees with whether the Debtor's *use* of funds was appropriate, the Debtor has sufficiently provided explicit information on the *disposition* of such funds. Therefore, the

---

[46] *See id.* at 12–13.
[47] *See Guerrio v. Kilroy (In re Kilroy)*, 354 B.R. 476, 489 (Bankr. S.D. Tex. 2006); *see also* 6 Collier on Bankruptcy 727.08 (16th ed. 2025).
[48] *See Rutan*, 2023 Bankr. LEXIS at *11–12 (citing *In re Retz*, 606 F.3d 1189, 1205 (9th Cir. 2010)).
[49] *See* Compl. at 8, Adversary Case, ECF No. 1.
[50] *See id.*
[51] *See id.* at 6–7.

Court finds that the Plaintiff has failed to plead a cause of action under § 727(a)(5) and that, given the evident nature of the disclosures made by the Debtor, leave to amend should not be granted as to Count II.

        3.      *Count III—Exception to Discharge Under 11 U.S.C. § 523(a)(4)*

Section 523(a)(4) contains three (3) distinct causes of action, of which the Plaintiff alleges that two (2) apply to the Debtor: (i) fraud or defalcation in a fiduciary capacity and (ii) a debt procured through embezzlement.[52] Although pled as one count, the Court will address each cause of action separately.

        i.      *Fraud or Defalcation in a Fiduciary Capacity*

For a debt to be nondischargeable based upon fraud or defalcation in a fiduciary capacity, a plaintiff must show that the debtor (i) stood in a fiduciary relationship to the plaintiff; (ii) the relationship existed prior to the creation of the debt; and (iii) the debt arose from some act of fraud or defalcation of the debtor.[53] The definition of the term "fiduciary" for purposes of an exception to discharge is intended to refer to technical trusts and not to be construed expansively.[54] A general fiduciary duty imposed by state law does not establish the type of technical trust necessary to except a debt from discharge based on fraud or defalcation in a fiduciary capacity.[55] "Duties of loyalty, good faith, and care—to the extent they exist—are too general to establish an express or technical trust as that term is understood for purposes of § 523(a)(4)."[56] The Complaint alleges that the Debtor was a fiduciary of the Plaintiff, referring to her as an "upper-level management

---

[52] 11 U.S.C. § 523(a)(4); *see Chun v. Aurangzaib (In re Aurangzaib)*, 2025 Bankr. LEXIS 44, at *7 (Bankr. N.J. 2025). The third cause of action, a debt procured through larceny, is not pled.

[53] *See Strategic Funding Source, Inc. v. Dodge (In re Dodge)*, 623 B.R. 663, 667 (Bankr. N.D. Ga. 2020) (citing *Quaif v. Johnson (In re Quaif)*, 4 F.3d 950, 953–55 (11th Cir. 1993)); *see also Huber v. Talbott (In re Talbott)*, 2012 Bankr. LEXIS 246 (Bankr. D.D.C. 2012) (also citing *Quaif*).

[54] *See Quaif*, 4 F.3d at 953; *Follett Higher Educ. Grp, Inc. v. Berman (In re Berman)*, 629 F.3d 761, 767–68 (7th Cir. 2011).

[55] *See Strategic Funding Source*, 623 B.R. at 668.

[56] *Id.* at 668–69.

employee" with a "fiduciary duty of loyalty."[57] However, even if serving as a non-owner member of upper level employment was sufficient to establish a duty of loyalty, such an implied state law duty is insufficient under § 523(a)(4) to plead the requisite express fiduciary duty.[58] Because the Complaint fails this first prong, the Court does not need to reach the question of whether the Complaint sufficiently alleges a qualifying debt. Therefore, the Court finds that the Plaintiff has failed to plead a cause of action under §523(a)(4) for fraud or defalcation in a fiduciary capacity.

ii.   *Debt Procured Through Embezzlement*

A claim for embezzlement must plead the "fraudulent appropriation of property by a person to whom such property has been entrusted."[59] In order to show embezzlement for purposes of § 523(a)(4), a plaintiff must show that a debt arose as a result of (i) the plaintiff entrusting their property to the debtor; (ii) the debtor appropriating the property for a use other than for which it was entrusted; and (iii) the circumstances indicate fraud.[60] In support of its claim of embezzlement, the Plaintiff alleges that the Debtor was provided and entrusted with the Plaintiff's "confidential, trade secret, and copyrighted information for use in her employment."[61] The Plaintiff further alleges that the Debtor downloaded the ESI to a personal external hard drive, shared certain information with Bassenian based, at least in part, on the ESI from the hard drive to secure her new employment, and retained the hard drive for a period of fourteen (14) days after the cessation of her employment.[62] Although the Plaintiff alleges that the Debtor also disclosed the ESI "with the intention and knowledge that her conduct would injure Plaintiff by, for example, causing Plaintiff to lose existing or prospective business with the clients [the Debtor] later solicited from

---

[57] Compl. at 32, Adversary Case, ECF No. 1.
[58] *See Arvest Mtg. Co. v. Nail (In re Nail)*, 446 B.R. 292, 300 (B.A.P. 8th Cir. 2011), *aff'd* 680 F.3d. 1036 (8th Cir. 2012).
[59] *Chun*, 2025 Bankr. LEXIS at *8 (quoting 4 Collier on Bankruptcy § 523.10 (16th ed. 2025)).
[60] *See Huber*, 2012 Bankr. LEXIS 246, at *15.
[61] Compl. at 13, Adversary Case, ECF No. 1.
[62] *See id.* at 13–16.

11

her position at Bassenian," the Complaint also alleges that as of the filing date, the Debtor had not brought in any new business to Bassenian.[63] The Complaint relies on the non-specific allegations of the Debtor's use of the ESI as part of a basis for information shared with Bassenian and her two-week delay in turnover of the hard drive to establish the Debtor's fraudulent intent. However, despite prayers for relief for alleged damages, the Complaint fails to allege an actual, identifiable monetary loss to Plaintiff, monetary gain by Bassenian, or any other debt to Plaintiff (other than possibly litigation costs) potentially arising from the Debtor's actions. Thus, even if the allegations regarding the use of the ESI by the Debtor and/or the delay in turnover of the hard drive sufficiently pled a cause of action for embezzlement, the Complaint fails to allege any debt to the Plaintiff arising from such acts and therefore fails to plead the requisite fraudulent circumstances to support a claim of embezzlement under § 523(a)(4). Therefore, the Court finds that the Plaintiff has failed to plead a cause of action under § 523(a)(4) and grants the Motion to Dismiss as to Count III.

        *4.*        *Count IV—Exception to Discharge Under 11 U.S.C. § 523(a)(6)*

Section 523(a)(6) excepts a debt from discharge to the extent the debt arises from the "willful and malicious injury by the debtor to another entity or to the property of another entity."[64] In order to state a claim under § 523(a)(6), a plaintiff must allege (i) the debtor caused an injury; (ii) the debtor's actions were willful; and (iii) the debtor's actions were malicious.[65] An act is malicious if it is taken in "conscious disregard of one's duties or without just cause or excuse."[66] Further, the action must not only have been willful, but both the action itself and the resulting injury must be intended by a debtor.[67] A simple breach of contract, even intentional, does not give

---

[63] *See id.* at 14–16.
[64] 11 U.S.C. § 523(a)(6).
[65] *See United Providers, Inc. v Pagan (In re Pagan)*, 564 B.R. 324, 325–26 (Bankr. N.D. Ill. 2017); *see also MarketGraphics Research Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907 (6th Cir. 2020).
[66] *Ventura v. Donna (In re Donna)*, 2019 U.S. Dist. LEXIS 186418, at *30 (D.D.C. Oct. 28, 2019).
[67] *See Oakland Ridge Homeowners Ass'n. v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998)).

rise to a § 523(a)(6) exception from discharge as "such a sweeping approach contradicts the policy of construing exceptions to discharge narrowly."[68]

The Plaintiff asserts that by taking, retaining, and allegedly sending information to Bassenian based upon the ESI, the Debtor acted willfully and maliciously.[69] However, the allegations are principally comprised of broad statements about the Debtor's actions and without specifics regarding the use and/or disclosure of the ESI, and more importantly, the Complaint does not allege a specific injury as a result thereof. Even considering the allegations contained in the EDVA Complaint, the Plaintiff never points to a specific use of information, instead pointing to the saving of the ESI to a hard drive, to the Debtor's preparation of certain business plans in applying to Bassenian while in possession of the ESI, and the potential loss of business by the Plaintiff as a result.[70] However, as alleged in the Complaint, the Debtor "has brought in no new business"[71] to Bassenian. Further, despite prayers for relief for damages, at no point does the Plaintiff allege any loss of business or any other actual economic injury (other than possibly litigation costs). Thus, even if the Complaint sufficiently pled a willful and malicious act, it fails to allege any debt arising from an injury, and certainly fails to allege willful intent to cause an injury. Therefore, the Court finds that the Plaintiff has failed to plead a cause of action under § 523(a)(6) and grants the Motion to Dismiss as to Count IV.

     5.    *Count V—Non-Dischargeability of Equitable Remedies Pursuant to 11 U.S.C. § 101(5)(B)*

---

[68] *Dixon v. Wilkerson (In re Wilkerson)*, 644 B.R. 349, 373 (Bankr. E.D. Va. 2022); *see also United Providers*, 564 B.R. at 326 ("An intentional breach of contract, however, is not enough to support a claim under § 523(a)(6) unless the debtor's conduct also gives rise to an independent tort.").
[69] *See* Compl. at 14, Adversary Case, ECF No. 1.
[70] *See id.* at 9–11.
[71] *Id.* at 14.

The EDVA Complaint contains four (4) prayers for equitable relief not specifically pled in the Complaint in this Adversary Case. The EDVA Complaint prayers for relief include various forms of a request for entry of an injunction prohibiting the Debtor from any further disclosure of the ESI. The Plaintiff attempts to seek any judgment based upon an equitable remedy to be determined to be non-dischargeable under § 101(5)(B). Section 101(5)(B) is not a basis for denial of a discharge, but is an operative section of the Code which defines a right to an equitable remedy as a claim in a bankruptcy case. Notwithstanding the fact that an equitable remedy may be a claim, the appropriate method for determination of whether a claim is dischargeable is a cause of action under § 523, not by incorporation of a civil cause of action. If the Plaintiff wishes to request equitable relief, such as an injunction, from the Court, the Bankruptcy Rules specifically provide for such a request and such relief should be pled as an independent cause of action with a basis thereon.[72] As such, the Court finds that Count V is neither a valid cause of action, nor it is an adequately pled request for relief under Bankruptcy Rule 7001(g), and grants the Motion to Dismiss as to Count V.

      6.    *Count VI—Dismissal Pursuant to 11 U.S.C. § 707(a)*

A party moving for dismissal under § 707(a) bears the burden of demonstrating that cause exists. The Plaintiff alleges that the totality of the Debtor's prepetition conduct, specifically in the timeframe after leaving the Plaintiff's employ, constitutes bad faith in the filing of her chapter 7 case. In alleging bad faith, the Plaintiff points to the numerous and specific allegations related to each of the other causes of action in the Complaint. A cause of action for dismissal for bad faith "does not lend itself to a strict formula . . . courts must consider the totality of the circumstances underlying each case to determine whether a debtor has acted in bad faith."[73] The Court has

---

[72] *See* Fed. R. Bankr. P. 7001(g).
[73] *In re Campbell*, 634 B.R. 647, 654 (Bankr. D.D.C. 2021).

adopted a multi-factor test with no one factor being determinative.[74] As discussed above, the Complaint contains numerous, specific allegations as to the Debtor's conduct in the months immediately preceding her chapter 7 filing, including her conversion of non-exempt assets into exempt assets, her significant spending in excess of her budget, and her choice to pay creditors other than the Plaintiff.[75] In addition to the allegations related to the other counts in the Complaint, the Plaintiff further relies upon the Debtor's alleged lack of candor by her scheduling of the Plaintiff's claim as non-consumer debt "in an effort to meet the means test"[76] and claiming of exemptions to which she was not entitled as of the date of filing.[77] Implied in the Plaintiff's allegations is that the Debtor's use of chapter 7 relief is unfair to creditors (or at least unfair to the Plaintiff) and inconsistent with the purpose of bankruptcy to afford a fresh start to the honest but unfortunate debtor.[78] As pleaded, the Complaint contains sufficient factual allegations to support a *prima facie* a cause of action for dismissal. Therefore, the Court denies the Motion to Dismiss as to Count VI.

---

[74] *Id.* at 655.
> After a thorough review of the majority of the multi-factor tests, the following factors stand out to this Court as those most relevant and appropriate to a totality of the circumstances determination under § 707(a):
> (1) the improper or unexplained transfers of assets prior to filing;
> (2) the debtor's lack of candor and completeness in statements and schedules, such as misstatements of assets, income or expenses to disguise financial condition of debtor or estate;
> (3) the debtor has sufficient resources to repay debt(s) that stand to be discharged;
> (4) the debtor failed to attempt to repay creditors, despite having means to do so;
> (5) the debtor maintains a lavish lifestyle, with excessive expenditures;
> (6) the debtor's use of bankruptcy relief would be unfair to creditors and inconsistent with the fundamental purpose of bankruptcy to afford a fresh start to an honest but unfortunate debtor, including but not limited to whether: (a) the debtor's petition is part of a pattern to evade a single creditor; (b) the debtor paid all but one creditor prior to filing the petition; and (c) the debtor paid insider creditors prior to filing the petition.

[75] *See* Compl. at 5–8, Adversary Case, ECF No. 1.

[76] Debtors with primarily non-consumer debt are not required to satisfy the means test for the purposes of chapter 7 eligibility. *See* 11 U.S.C. § 707(b). Underlying the Plaintiff's argument is that if the Plaintiff's debt was categorized as consumer debt, the Debtor may face a presumption of abuse under § 707(b)(1) and either dismissal of her case or conversion to a case under chapter 11 or 13.

[77] *See* Compl. at 10, Adversary Case, ECF No. 1. *See Campbell*, 634 B.R. at 655.

[78] *See Campbell*, 634 B.R. at 653 (quoting *Marrama v. Citizens* Bank, 549 U.S. 365, 367 (2007)).

### IV.     Conclusion

For the reasons stated herein, the Court hereby:

1.     Grants the Motion to Dismiss as to Count II with prejudice.

2.     Grants the Motion to Dismiss as to Counts III, IV, and V, with leave to amend within fourteen (14) days. If the Plaintiff fails to timely file an amended complaint, the dismissal of Counts III, IV, and V shall be deemed final and with prejudice.  If the Plaintiff files an amended complaint, the answer deadline shall be 21 days after service of the same.

3.     Denies the Motion to Dismiss as to Counts I and VI. The answer deadline for Count I and VI shall be the later of 21 days after either (i) entry of this order or (ii) service of an amended complaint as authorized herein.

[Signed and dated above.]

Copies to: recipients of electronic notifications.